TRAVIS JENSEN (STATE BAR NO. 259925)
tjensen@orrick.com
DENISE M. MINGRONE (STATE BAR NO. 135224)
dmingrone@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:     +1 650 614 7401

ANDREW SCHREIBER (Bar No. 90012714)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC  20005-1706
Telephone:    +1 202 339 8400
Facsimile:     +1 202 339 8500

Attorneys for Plaintiffs
MICROCHIP TECHNOLOGY INC. and
MICROSEMI CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROCHIP TECHNOLOGY INC. and MICROSEMI CORP., <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br>GTMI, INC., CANG NGUYEN, and JERRY CHANG, <br><br>　　　　　Defendants. | Case No. <br><br>**COMPLAINT FOR CONVERSION, BREACH OF CONTRACT, AND UNFAIR COMPETITION** <br><br>DEMAND FOR JURY TRIAL |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

COMPLAINT FOR CONVERSION,
BREACH OF CONTRACT, AND UNFAIR
COMPETITION

Plaintiffs Microchip Technology Inc. and Microsemi Corporation (collectively, "Microchip" or "Plaintiffs") hereby bring this Complaint against: (1) Defendant GTMI, Inc. ("GTMi")[1] for conversion and unfair competition; (2) Defendant Cang Nguyen ("Nguyen") for conversion and breach of contract; and (3) Defendant Jerry Chang ("Chang," collectively "Defendants") for conversion and breach of contract.  Microchip seeks injunctive relief, the recovery of specific personal property, monetary damages, an accounting, and any other relief the Court may deem proper.  Microchip alleges the following based on personal knowledge, unless indicated as on information and belief.

## NATURE OF THE ACTION

1. Since Microchip's founding in 1987, the company has been at the technological forefront of innovation in the semiconductor industry.  Microchip's cutting-edge products—including its radio frequency ("RF") product line—serve industries that range from aerospace and defense to consumer electronics and appliances.

2. Over the years, Microchip has developed a robust portfolio that encompasses semiconductor product design, development, and fabrication, as well as associated intellectual property.  Microchip is committed to advancing the industry while safeguarding its proprietary, confidential information.

3. Unfortunately, unscrupulous actors—including two of Microchip's own former employees—do not share these aims.  After working at Microchip, and its predecessor firms, for years, Defendants Nguyen and Chang opted to trade in on their access to Microchip's confidential technical information and property.  In fact, Defendants Nguyen and Chang surreptitiously stole Microchip's custom tunable capacitors and associated proprietary information.

4. Defendants Nguyen and Chang did so to break into an established industry—bypassing extensive development work—and steal sales from Microchip.  Indeed, using goods and confidential information stolen from Microchip, Defendants Nguyen and Chang formed an upstart entity (Defendant GTMi) that offered virtually identical RF products to Microchip.  And,

---

[1] According to GTMi's website at https://www.gtmii.com/, the acronym GTMi stands for Global Transistors & Modules Innovation.

once in the market, Defendant GTMi undercut Microchip's pricing to win out on a sale to an existing Microchip customer.

5. Defendants' unauthorized use and access of Microchip's proprietary, confidential information and property—including Microchip's custom tunable capacitors—amounts to conversion, and is in direct violation of Defendant Nguyen and Chang's contractual obligations to Microchip.

6. Now, Microchip seeks the Court's help, as the company is suffering irreparable injury in the form of lost good will and harm to its business reputation that can never be restored, via the misuse of Microchip's custom tunable capacitors and proprietary information, that has further diminished Microchip's competitive advantage in the marketplace.

**PARTIES**

7. Plaintiff Microchip Technology Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 2355 West Chandler Blvd., Chandler, Arizona 85224-6199.

8. Plaintiff Microsemi Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 2355 West Chandler Blvd., Chandler, Arizona 85224-6199.

9. Defendant GTMI, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 33024 Korbel Ct, Union City, California 94587. According to the contact information provided on GTMI, Inc's website at https://www.gtmii.com/, GTMI, Inc. also has an office at 1805 Little Orchard St. San Jose, California 95125.

10. On information and belief, Defendant Cang Nguyen is an individual who, at all relevant times, resides at 2950 Glen Alden Ct., San Jose, California 95148 and works in California.

11. On information and belief, Defendant Jerry Chang is an individual who, at all relevant times, resides at 33024 Korbel Ct, Union City, California 94587 and works in California.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because there exists complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Plaintiffs are both Delaware corporations with their respective principal places of business in Arizona, whereas Defendant Nguyen is a citizen of California, Defendant Chang is a citizen of California, and Defendant GTMi is a California corporation with its principal place of business likewise in California.

13. Further, this Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs bring an unfair competition cause of action arising under federal law: 15 U.S.C. § 1125.

14. This Court has personal jurisdiction over Defendant GTMi because it is incorporated in California, its principal place of business lies within the State of California, and because it has conducted and does conduct business within the State of California and the Northern District of California.

15. This Court has personal jurisdiction over Defendant Nguyen because he is a California resident.

16. This Court has personal jurisdiction over Defendant Chang because he is a California resident.

17. Venue in this district is appropriate under 28 U.S.C. §§ 1391 and 1400 because all Defendants reside in the State of California and specifically the Northern District of California, Defendants Nguyen and Chang are employees working in this District, and because a substantial part of the relevant events giving rise to the dispute occurred within this District.

## FACTUAL ALLEGATIONS

**Microchip's Pioneering Work**

18. Since Microchip Technology Inc. was founded in 1987, it has been a pioneer in the semiconductor industry. Microchip has been at the forefront of innovation in high-tech product lines ranging from microcontrollers to memory products (such as EEPROM and SRAM) as well as radio frequency ("RF")/microwave ("MW") and wireless devices. Microchip has developed a

comprehensive portfolio that includes design, manufacturing, and intellectual property. Microchip's multi-faceted approach services key markets and industries such as defense, aerospace, automotive, computing, communications, as well as consumer appliances.

19. Microchip is one of the largest semiconductor companies in the world, employing over 22,600 individuals worldwide. To maintain its competitive position in the marketplace, Microchip has periodically made strategic acquisitions of other companies over the years. Relevant here, Microchip Technology Inc. acquired Microsemi Corporation in May 2018.

20. Since its founding in 1959, Microsemi Corporation was innovator in the semiconductor field and has provided chips and associated industrial solutions to, for example, the defense, aerospace, and tele-communications industries. Today, Microsemi Corporation is a wholly owned subsidiary of Microchip Technology Inc.

21. Microchip Technology Inc.'s acquisition of Microsemi Corporation permitted the companies to achieve certain synergies—in particular, with respect to cutting-edge RF products formulated, designed, and developed for applications in the defense and aerospace industries.

22. Microchip takes its commitment to innovation seriously; to that end, Microchip has put in place robust protections of its valuable intellectual property and proprietary, confidential information. Principally, Microchip maintains safeguards over its business and technical know-how through negotiated contracts, such as employment agreements.

23. One example of Microchip's innovative product designs can be found in its custom tunable capacitors. Microchip designed, developed, and fabricated custom tunable capacitors with unique properties in its Santa Clara, California manufacturing facility. Specifically, Microchip's custom tunable capacitors are able to operate at high voltages. In addition, Microchip's capacitors contained ground bars—a means of facilitating grounding in Microchip's early GaN-on-SiC transistors.

24. These custom tunable capacitors are proprietary to Microchip. The company does not license or otherwise sell standalone capacitors to anyone else. The capacitors are soldered into Microchip's RF products. No other fabricators had such a custom tunable capacitor design.

1   Shortly before closing its Santa Clara manufacturing facility, Microchip fabricated a supply of its

2   unique capacitors to provide inventory for its RF products for years to come.

3   **Defendant Nguyen's Work at Microsemi Corporation**

4   25.     Defendant Nguyen started in his role as a Development Engineer Supervisor at

5   Advanced Power Technology, Inc. ("APT") on March 1, 2004.  APT was subsequently acquired

6   by Microsemi Corporation in November 2005; Defendant Nguyen continued in this same role at

7   Microsemi Corporation.  In his time at Microsemi Corporation, and later Microchip, Defendant

8   Nguyen would go on to hold several positions including: Engineering Site Manager, Business

9   Development Manager, Production Manager, Lead R&D Engineer, and Principal R&D Engineer.

10  As a part of his job function in these roles, Defendant Nguyen was directly responsible for new

11  RF product development and manufacture of semiconductor products.  In particular, a core part of

12  Defendant Nguyen's work involved designing and otherwise developing high performance

13  transistors, with associated underlying capacitors.  Such products were used by, for example, the

14  aerospace, defense, and communications industries.

15  26.     As a function of his roles and responsibilities, Defendant Nguyen was provided

16  unrestricted access to Microchip's proprietary, confidential information for RF products,

17  including company intellectual property, products, devices, schematics, layouts, and associated

18  components, as well as the computer-aided designs (CAD) underlying such technologies.

19  Defendant Nguyen was himself engaged in generating company confidential information—in the

20  form of design schemas and project development for *e.g.*, semiconductor RF products—and

21  otherwise handling proprietary equipment.

22  27.     On May 8, 2006, Defendant Nguyen executed an employment letter and

23  "Assignment of Inventions and Copyrights and Confidential Information Agreement"

24  (collectively, "Nguyen's Employment Agreement") containing provisions requiring employees to

25  maintain the confidentiality of Microsemi Corporation's confidential, proprietary information and

26  intellectual property.

27  28.     Defendant Nguyen's Employment Agreement also contained provisions providing

28  that all equipment, notebooks, documents, memoranda, reports, files, samples, books,

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

COMPLAINT FOR CONVERSION,
BREACH OF CONTRACT, AND UNFAIR
COMPETITION

1   correspondence, lists, other written or graphic records, and the like, affecting or relating to
2   company business, which Employee shall prepare, use, construct, observe, possess, or control
3   shall be and remain the company's sole property.

4   29.  Any violation of either of the aforementioned provisions was described as a
5   "material breach" in Defendant Nguyen's Employment Agreement.

6   30.  While employed at Microsemi Corporation, Defendant Nguyen worked
7   extensively with Defendant Chang.

**Defendant Chang's Work at Microsemi Corporation**

9   31.  Defendant Chang was a long-time Microsemi Corporation (or its predecessor
10  APT) employee; between 2001 and 2014 he was the Director for Design Engineering & Business
11  Development. Subsequently, from January 2014 to June 2016, Defendant Chang served as
12  Director & Site Manager of the Transistor Solutions Group.

13  32.  In these roles Defendant Chang served a hybrid engineering and business function;
14  for example, he worked on designing GaN SiC power transistor products and developed business
15  for such products in the avionics and radar markets. In particular, Defendant Chang led an
16  engineering team that designed such transistor products. As part of his management
17  responsibilities, Defendant Chang oversaw Defendant Nguyen's work at Microsemi, specifically
18  on GaN-SiC RF products. Much like Defendant Nguyen, Defendant Chang had access to
19  Microsemi's confidential, proprietary information related to RF products. This included:
20  company intellectual property and actual, tangible property, in addition to the design schematics
21  undergirding such technologies. And, similar to Defendant Nguyen, Defendant Chang likewise
22  developed and handled confidential information as part of his employment obligations.

23  33.  On information and belief Defendant Chang executed one or more employment
24  and/or confidentiality agreements (collectively, "Chang's Employment Agreement") in 2006
25  containing provisions requiring employees to maintain the confidentiality of Microsemi
26  Corporation's confidential, proprietary information and intellectual property.

27  34.  On information and belief Defendant Chang's Employment Agreement also
28  contained provisions providing that all equipment, notebooks, documents, memoranda, reports,

files, samples, books, correspondence, lists, other written or graphic records, and the like, affecting or relating to company business, which employee shall prepare, use, construct, observe, possess, or control shall be and remain the company's sole property.

35. Any violation of either of the aforementioned provisions would be a material breach of Defendant Chang's Employment Agreement.

**Defendants' Chang and Nguyen Involvement with GTMi**

36. In June 2016, Defendant Chang departed Microsemi Corporation. On information and belief, Defendant Chang went to work for Mercury Systems where he served as the Director of Business Development.

37. Utilizing his business and product development experience, Defendant Chang filed Articles of Incorporation with the California Secretary of State for a new entity called "GTMI, Inc." on November 26, 2018.

38. In July of 2019, Defendant Nguyen took a leave of absence from Microchip. On August 29, 2019, Defendant Nguyen gave notice that he was ending his employment with Microchip.

39. Upon Defendant Nguyen's departure, Microchip immediately removed his access to the company's systems and retrieved his employee badge. Defendant Nguyen's last official day at the company was September 6, 2019.

40. On information and belief, immediately following his separation from Microchip, Defendant Nguyen joined GTMi to again work with Defendant Chang, his former boss.[2] Defendant Nguyen's affiliation with GTMi is corroborated by the fact that his spouse is a Director at GTMi. Defendants Chang and Nguyen worked together over the ensuing months at GTMi to design, develop, and manufacture various RF product offerings. In particular, Defendants Chang and Nguyen worked together to develop "[i]nnovative GaN on SiC RF/microwave transistors and modules solutions[.]" *See* https://www.gtmii.com. As with

---

[2] Despite public records indicating that Defendant Chang formed GTMi, he does not list his role with the company on his LinkedIn profile. Similarly, Defendant Nguyen does not list his involvement with GTMi on his LinkedIn profile. Instead, Defendant Nguyen states that he is still employed at Microchip, despite departing the company in September 2019.

1 Microchip, these product offerings are for "global avionics, radar, and industrial applications."
*Id.*

41. By May 2020, GTMi touted on its website that it had three initial preliminary releases of GaN/SiC High Efficiency Transistors. *See* https://storage.googleapis.com/wzukusers/user-34606140/documents/1ade17bde4824a4990f9200b2eb8b09e/MA0912-250%20Rev%202.pdf at 6; https://storage.googleapis.com/wzukusers/user-34606140/documents/8c9135d162494196b33ffee7b696cf0e/GT1214-16%20Rev%202.pdf at 7; *see also* https://storage.googleapis.com/wzukusers/user-34606140/documents/8bdd5744f93e48e3987d98c1597ae2c0/GT2729-320%20Rev%202.pdf at 7.

42. As of March 2023, approximately three and a half years after its incorporation, GTMi was reported to have revenue of between $1 - $5 million. *See* https://www.zoominfo.com/c/gtmi-inc/461195264.

**Microchip Loses Business to GTMi, and Suffers Ongoing Harm**

43. On March 21, 2023, Microchip learned through a distributor that Microchip had lost a sale for RF products to GTMi. The customer that switched suppliers was Bharat Electronic Limited ("BEL"), a long-standing Microchip customer.

44. This development came as a surprise to Microchip for two reasons: first, it had a business relationship with BEL dating back several decades, and second the lost sale was to GTMi, a company Microchip had not previously heard of.

45. In particular, Microchip was informed by its distributor Tecnomic Components that GTMi offered over 500 pieces of part no. GT1011-1200V at a significantly discounted price. Microchip was also informed that BEL had accepted GTMi's offer. As a result, Microchip has suffered harm in excess of $75,000.

46. The harm to Microchip extends beyond the immediate lost sale to GTMi because GTMi effectively obtained a design win with BEL. This means that GTMi's components are essentially locked into BEL's designs for years to come. This is because it would be costly for BEL to reconsider and re-qualify a new product after having selected its design. Consequently,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

COMPLAINT FOR CONVERSION,
BREACH OF CONTRACT, AND UNFAIR
COMPETITION

Microchip will suffer additional lost sales and good will (*e.g.*, customer relationship) for a long time to come.

**Reverse Engineering Confirms Defendants' Illicit Conduct**

47. As described, GTMi offers various GaN on SiC RF/microwave high efficiency transistor products for avionics, radar, and industrial applications. *See generally* https://www.gtmii.com. GTMi's Products webpage features a portfolio of RF products, including additional models of RF power transistors (for avionic, L-band radar, S-band radar, and ISM applications, pico-pallets, and micro-modules). https://www.gtmii.com/products.

48. These product offerings substantially overlap and compete with the RF products that Microchip has offered for years. In view of the lost sale to BEL, GTMi's large RF product portfolio developed over a relatively short time span, and employment of at least two former Microchip employees, Microchip set out to investigate GTMi and its product offerings.

49. Specifically, Microchip set about reverse engineering certain of GTMi's products that it was able to obtain through distributors. The GTMi GaN/SiC high efficiency transistor products Microchip investigated included GTMi model numbers: GT0912-16, GT1011-1200, GT1214-700L.

50. Microchip's reverse engineering analysis revealed that GTMi is using Microchip's custom tunable capacitors. First, the capacitor's in GTMi's products are substantially identical in in outward appearance to Microchip's custom tunable capacitors. For example, GTMi's capacitors have the same physical size, shape, dimensions, layout, tuning pads, ground bars, and fiducials (alignment reference points used during chip manufacturing) as Microchip's custom tunable capacitors.

51. These similarities—especially the presence of the ground bar and fiducials in the bottom corner—would not be expected to be present in non-Microchip capacitors. The ground bar is an historic artifact from the particular fabrication process employed by Microchip and unique to Microchip's custom tunable capacitor design. It is no longer contemporaneously relevant nor functional and there would be no reason for GTMi to have included such a ground bar had GTMi designed its own capacitors.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

COMPLAINT FOR CONVERSION,
BREACH OF CONTRACT, AND UNFAIR
COMPETITION

52. In addition, Microchip's reverse engineering analysis revealed that the capacitors in GTMi's products have a matching design choice unique to Microchip's fabrication process—a dielectric composed of two deposition layers.

53. Moreover, the capacitors in GTMi's products have substantially the same elemental composition and thicknesses as Microchip's custom-built capacitors. In particular, the testing determined that GTMi's capacitors have the same compositions of metal and Nitrate—as well as virtually identical layer thicknesses—as Microchip's custom tunable capacitors.

54. Further, Microchip's investigation uncovered that GTMi's publicly available datasheets prominently displayed on the GTMi website replicate Microchip's datasheets. GTMi's datasheets contain the same performance metrics as Microchip's datasheets, and include the company's proprietary, confidential information as shown in the example below.



Compare https://storage.googleapis.com/wzukusers/user-34606140/documents/10798dcbdd5c4caa89a7eccc297fb36a/GT1214-120.pdf at 3 with https://www.microsemi.com/document-portal/doc_download/136786-1214gn-120e-1214gn-120el-1214gn-120ep-datasheet at 10.

55. Further, many of these datasheets still contain *Microsemi's* legal disclaimer:

> The information contained in the document is PROPRIETARY AND CONFIDENTIAL information of GTMi and cannot be copied, published, uploaded, posted, transmitted, distributed or disclosed or used without the express duly signed written consent of GTMi If the recipient of this document has entered into a disclosure agreement with GTMi, then the terms of such Agreement will also apply . This document and the information contained herein may not be modified, by any person other than authorized personnel of GTMi. No license under any patent, copyright, trade secret or other intellectual property right is granted to or conferred upon you by disclosure or delivery of the information, either expressly, by implication, inducement, estoppels or otherwise. Any license under such intellectual property rights must be approved by GTMi in writing signed by an officer of GTMi.
> GTMi reserves the right to change the configuration, functionality and performance of its products at anytime without any notice. This product has been subject to limited testing and should not be used in conjunction with life-support or other mission-critical equipment or applications. GTMi assumes no liability whatsoever, and GTMi disclaims any express or implied warranty, relating to sale and/or use of GTMi products including liability or warranties relating to fitness for a particular purpose, merchantability, or infringement of any patent, copyright or other intellectual property right. ==The product is subject to other terms and conditions which can be located on the Web at http://www.microsemi.com/legal/tnc.asp.==

*See, e.g.*, https://storage.googleapis.com/wzukusers/user-34606140/documents/8c9135d162494196b33ffee7b696cf0e/GT1214-16%20Rev%202.pdf at 7 (annotated).

56. Moreover, GTMi's datasheet for model no. GT2729-320 contains a mistake—an inadvertent drawing error that *Microchip* had made in its materials and corrected prior to Microchip's public release of the datasheet. The fact that GTMi's model no. GT2729-320 datasheet contains this identical error in its publicly available materials plainly identifies the datasheet as a Microchip datasheet.



*See* https://storage.googleapis.com/wzukusers/user-34606140/documents/8bdd5744f93e48e3987d98c1597ae2c0/GT2729-320%20Rev%202.pdf at 6 (annotated).

57. The metadata for GTMi's datasheets shows that Defendant Nguyen is the document creator and/or modifier. For example, the metadata from GTMi's model no. GT1214-

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

COMPLAINT FOR CONVERSION,
BREACH OF CONTRACT, AND UNFAIR
COMPETITION

120 shows that Defendant Nguyen created and/or modified this datasheet on December 18, 2018—while he was employed at Microchip.

58. Based on Microchip's investigation, reverse engineering, and analysis, Microchip determined that Defendants Nguyen and Chang converted Microchip's custom tunable capacitors, datasheets, and confidential/proprietary information and provided these items to GTMi. Likewise, upon receiving the capacitors, datasheets, and confidential/proprietary information, GMTi converted them for its own purposes, including to unfairly compete with Microchip. These items include: all custom tunable capacitors fabricated at any Microchip facility, and at least the following Microchip datasheets, associated with Microchip part numbers:

a. 0912GN-15E/EL;

b. 0912GN-30E/EL/EP;

c. 1011GN-120E/EL/EP;

d. 0912GN-250V;

e. 0912GN-650V;

f. 1011GN-125E/EL;

g. 10GN-750ELMV;

h. 1011GN-1200V/EL;

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 12 -

COMPLAINT FOR CONVERSION,
BREACH OF CONTRACT, AND UNFAIR
COMPETITION

      i. 1214GN-15E/EL;

      j. 1214GN-120E/EL;

      k. 1214GN-280LV;

      l. 1214GN-600VHE;

      m. 1214GN-700V;

      n. 1214GN-900V;

      o. 2731GN-120V;

      p. 78160GNP;

      q. 0510GN-25CP;

      r. 2425GN-10CW, 76027GN.

59. Upon termination of their employment, Defendants Nguyen and Chang were not (and are not) entitled to maintain possession over any Microchip property, including but not limited to Microchip's custom tunable capacitors, datasheets and/or any of its proprietary, confidential information. Defendants Nguyen and Chang did not have permission from Microchip to retain nor to use any Microchip property in any form for the use and benefit of themselves or GTMi.

60. Defendants Nguyen and Chang are aware of Microchip's ownership of the custom tunable capacitors, and Microchip is entitled to the return of the converted items. Defendants' possession of such capacitors is also a clear, willful, and a "material breach" of their respective Employment Agreements. Further, Defendants failed to maintain their on-going duty of confidentiality owed to Microchip as required by their Employment Agreements.

61. GTMi knows, or should know, of the conversion of Microchip's property for GTMi's business because of the work done by Defendants Chang and Nguyen to utilize the converted property to develop GTMi's RF products, datasheets, and website to unfairly compete against Microchip. Microchip's confidential information and datasheets are displayed on GTMi's website and Microchip's stolen capacitors are used in GTMi's RF products. GTMi therefore knew or should have known that it is not permitted to possess nor use any Microchip property,

1 including but not limited to Microchip's custom tunable capacitors, datasheets nor any other of

2 Microchip's proprietary, confidential information.

3     62. On information and belief, Microchip's custom tunable capacitors are held by

4 Defendant GTMi and/or Defendants Nguyen and Chang.

5     63. Defendant GTMi is unfairly competing against Microchip by improperly using

6 Microchip's own custom tunable capacitors and Microchip's proprietary, confidential information

7 as if it were GTMi's.

8     64. Defendants' actions have resulted in monetary losses as well as ongoing

9 irreparable harm including but not limited to the past and continuing loss of property, customer

10 goodwill, and damage to Microchip's business reputation.

## FIRST CLAIM FOR RELIEF

### (Conversion – Recovery of Specific Property (All Defendants))

13     65. Microchip hereby restates and re-alleges the allegations set forth in paragraphs 18

14 through 64 above and incorporates them by reference.

15     66. Microchip owns the custom tunable capacitors, datasheets, and

16 confidential/proprietary RF product information that Defendants Nguyen and Chang had access to

17 during their employment at Microchip. These include: all custom tunable capacitors fabricated at

18 any Microchip facility, and at least the following Microchip datasheets, associated with

19 Microchip part numbers: (1) 0912GN-15E/EL; (2) 0912GN-30E/EL/EP; (3) 1011GN-

20 120E/EL/EP; (4) 0912GN-250V; (5) 0912GN-650V; (6) 1011GN-125E/EL; (7) 10GN-

21 750ELMV; (8) 1011GN-1200V/EL; (9) 1214GN-15E/EL; (10) 1214GN-120E/EL; (11) 1214GN-

22 280LV; (12) 1214GN-600VHE; (13) 1214GN-700V; (14) 1214GN-900V; (15) 2731GN-120V;

23 (16) 78160GNP (custom part); (17) 0510GN-25CP; (18) 2425GN-10CW, 76027GN.

24     67. Defendants Nguyen, Chang, and GTMi are intentionally and substantially

25 interfering with Microchip's property by maintaining possession of the property—custom tunable

26 capacitors designed, developed, and manufactured with company resources—without

27 Microchip's consent following Defendants Nguyen and Chang's departures from Microchip.

28

68. As a direct and proximate cause of Defendant Nguyen and Chang's taking of Microchip's property, Defendants Nguyen, Chang, and GTMi are unjustly enriched and Microchip is sustaining damages in an amount to be proven at trial.

69. Microchip is also suffering irreparable harm as a result of Defendants Nguyen, Chang, and GTMi's activities and will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendants Nguyen, Chang, GTMi, and all other persons and/or entities acting in concert with them, are enjoined from engaging in any further such acts of conversion.

70. Microchip is entitled to the immediate return of its custom tunable capacitors and any other associated collateral, including Microchip's datasheets and proprietary/confidential RF product information.

71. Accordingly, Microchip requests entry of an order for immediate return of its property in Defendants Nguyen, Chang, and GTMi's possession, as described herein.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract (against Defendants Nguyen and Chang))

72. Microchip hereby restates and re-alleges the allegations set forth in paragraphs 18 through 71 above and incorporates them by reference.

73. Defendant Nguyen entered into a valid, binding, and enforceable Employment Agreement with Microsemi on May 8, 2006.

74. Defendant Chang likewise entered into a valid, binding, and enforceable Employment Agreement with Microsemi circa 2006.

75. Defendants Nguyen and Chang are materially breaching the terms of their respective Employment Agreements.

76. The Employment Agreements provide that Defendants Nguyen and Chang have ongoing obligations to maintain the confidentiality of Microchip (including Microsemi Corporation) confidential, proprietary information and intellectual property.

77. In addition, Defendants Nguyen and Chang's Employment Agreements provide that all equipment, notebooks, documents, memoranda, reports, files, samples, books,

1  correspondence, lists, other written or graphic records, and the like, affecting or relating to the

2  company's business, which Employee shall prepare, use, construct, observe, possess, or control

3  shall be and remain the company's sole property.

4      78. In the course of his employment with Microsemi, Defendant Chang had

5  unrestricted access to Microsemi's proprietary, confidential information and equipment.

6      79. Defendant Chang separated from Microsemi Corporation in June 2016.

7      80. In the course of his employment with Microchip, Defendant Nguyen had

8  unrestricted access to Microchip's proprietary, confidential information and equipment.

9      81. Defendant Nguyen separated from Microchip in September 2019.

10      82. Defendant Chang formed GTMi, which Defendant Nguyen later joined, and used

11  (and continues to use) Microchip's proprietary, confidential information and property (including

12  Microchip's custom tunable capacitors) to help GTMi design, develop, and manufacture

13  competing products. These actions constitute material breaches of Defendant Cang and Nguyen's

14  Employment Agreements.

15      83. Microchip complied with and fully performed its obligations, conditions,

16  covenants and promises under the parties' Employment Agreements.

17      84. As a direct and proximate result of Defendants Nguyen and Chang's breaches of

18  their respective Employment Agreements, Microchip is harmed—and will continue to suffer

19  damages—and is entitled to specific performance.

## THIRD CLAIM FOR RELIEF

### (Lanham Act Violations (against Defendant GTMi))

22      85. Microchip hereby restates and re-alleges the allegations set forth in paragraphs 18

23  through 84 above and incorporates them by reference.

24      86. Pursuant to the Lanham Act (15 U.S. Code § 1125) a company is prohibited from

25  making false or misleading descriptions and/or representations of fact in commercial advertising,

26  in connection with a good in commerce.

27      87. Defendant GTMi unfairly and unlawfully uses Microchip's converted custom

28  tunable capacitors—and Microchip's proprietary, confidential information and datasheets—to

compete against Microchip. Defendant GTMi also makes false or misleading statements as to its own products. In particular, Defendant GTMi—through the public marketing and use of Microchip's datasheets and custom tunable capacitors—misrepresents the provenance and qualities of its own RF products in violation of the Lanham Act.

88. Actual deception is occurring, or at least a tendency to deceive a substantial portion of the intended audience, as at least BEL believes Defendant GTMi's RF products (as reflected in GTMi's datasheets) are of the same type and quality as Microchip's products.

89. The deception is material in that it is not only likely, but did influence BEL's purchasing decisions to select GTMi's product offerings over Microchip's goods.

90. The RF products advertised and sold by Defendant GTMi's travel in interstate commerce.

91. There is not only a likelihood of injury to Microchip but actual injury in the form of an immediate lost sale, ongoing shutout of a specific design schema, and Defendant GTMi's unjust enrichment through its false or misleading statements. Defendant GTMi's actions have resulted in monetary losses as well as ongoing irreparable harm including but not limited to the past and continuing loss of property, customer goodwill, and damage to Microchip's business reputation.

## FOURTH CLAIM FOR RELIEF
### (Unfair Competition (against Defendant GTMi))

92. Microchip hereby restates and re-alleges the allegations set forth in paragraphs 18 through 91 above and incorporates them by reference.

93. California Business and Professions Code section 17200 prohibits any unlawful, unfair, or fraudulent business act or practice and/or unfair, deceptive, untrue or misleading advertising, including any violation of California Business and Professions Code section 17200, by, among other things, making false and misleading public statements.

94. Defendant GTMi unfairly and unlawfully uses Microchip's converted custom tunable capacitors—and Microchip's proprietary, confidential information and datasheets—to compete against Microchip.

95. Defendant GTMi also makes false or misleading statements as to its own products. In particular, Defendant GTMi—through the public marketing and use of Microchip's datasheets and custom tunable capacitors—misrepresents the provenance and qualities of its own RF products in violation of California Business and Professions Code section 17200.

96. As a result of Defendant GTMi's unfair and/or fraudulent conduct, Microchip is injured via an immediate lost sale, likely ongoing shutout of a specific design schema, and Defendant GTMi's unjust enrichment through its false or misleading statements. Defendant GTMi's actions have resulted in monetary losses as well as ongoing irreparable harm including but not limited to the past and continuing loss of property, customer goodwill, and damage to Microchip's business reputation.

## DEMAND FOR JURY TRIAL

97. Pursuant to Federal Rule of Civil Procedure 38(b), Microchip demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. Entry of judgment in favor of Plaintiffs against Defendants;

B. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliated companies, assigns and successors in interest, and those persons in active concert or participation with them from using or otherwise accessing Plaintiffs' proprietary, confidential information, and intellectual property, including but not limited to: product designs, layouts, and equipment including, but not limited to, its custom tunable capacitors and datasheets;

C. An order directing Defendants to immediately return to Microchip all Microchip property, including but not limited to Microchip's custom tunable capacitors fabricated at any Microchip facility;

D. An order directing Defendants to remove all confidential Microchip information from the GTMi's website and return all confidential Microchip information in Defendants' possession, custody, or control to Microchip;

E. An order awarding Plaintiffs general and specific damages;

F. Prejudgment and post-judgment interest;

G. An order for an accounting of all gains, profits, cost savings, and advantages realized by Defendants from their acts;

H. An award of reasonable attorneys' fees; and

I. All such further and additional relief, in law or equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

Dated: December 12, 2023

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Travis Jensen*
TRAVIS JENSEN
Attorney for Plaintiffs
MICROCHIP TECHNOLOGY INC. and
MICROSEMI CORPORATION